## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 17-cr-69 (RDM)** |
| | : | |
| **CANDACE CLAIBORNE,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## RENEWED EMERGENCY MOTION FOR COMPASSIONATE RELEASE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Defendant's Renewed Emergency Motion For Compassionate Release (ECF Dkt. # 78) ("Motion" or "Instant Motion"). The defendant carries the burden to show that "extraordinary and compelling reasons" are present that warrant a reduction in her sentence. She alleges no such reasons in her motion, and her medical records from the institution show none.

## SUMMARY

The defendant is incarcerated in Federal Correctional Institution ("FCI") Hazelton, which, as of this writing, has two inmates testing positive for COVID-19. This achievement reflects the significant efforts by the United States Bureau of Prisons ("BOP") and FCI Hazelton to protect both staff and inmates, as detailed below and in the government response to the defendant's last Motion for Compassionate Release. Despite her insistence to the contrary in her prior motion, and as the court has found, under CDC guidelines, the defendant has no health condition that places her in a high-risk category for an adverse outcome from COVID-19.

Unfortunately, the defendant tested positive for COVID-19 on December 15.  Medical records indicate that she experienced a cough, fatigue, and intermittent body aches for approximately eleven days, that she experienced loss of taste or smell and nausea or vomiting on one day, but that she experienced no other symptoms and required no medical intervention.  At the time she was seen and tested positive for COVID-19, medical personnel noted that she was "alert and oriented," her lungs sounded clear, and that she had no fever.

Having now recovered from the virus, the defendant now argues that the risk of reinfection constitutes a reason supporting her compassionate release motion.  However, as other judges have ruled, the mere existence of the coronavirus and the possibility of contracting COVID-19 therefrom does not constitute an "extraordinary and compelling reason" supporting the defendant's release.  Moreover, the fact that the defendant contracted COVID-19 and has recovered suggests that her risk of reinfection is significantly lower than that of the unvaccinated public at large.

## FACTUAL BACKGROUND

### I.     The Bureau of Prisons' COVID-19 Vaccination Campaign

BOP is working with the Centers for Disease Control and Prevention (CDC) and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure the BOP remains prepared to administer the COVID-19 vaccine to inmates and staff as it becomes available.  As of the week of February 5, 2021, the vaccine had been delivered to every BOP facility.  As of February 18, 2021, 327 inmates at FCI Hazelton had received vaccinations.

BOP is committed to making the vaccine available to all staff and inmates who choose to receive it as quickly as possible.  When an institution receives an allocation of the vaccine, it is first offered to full-time staff because staff — who come and go between the facility and the

community — present a greater potential vector for COVID-19 transmission. Vaccinating staff protects staff members, inmates at the facility, and the community. Remaining doses at each BOP facility have been provided (and will be provided) to inmates based on priority of need in accordance with CDC guidelines. The vaccine will be offered to the inmate population on a wider basis when additional doses are available. Information on BOP's COVID-19 vaccine guidance can be found here: https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Additional information on BOP's vaccination efforts – including information concerning each facility that is updated daily – can be found here: https://www.bop.gov/coronavirus .

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP facility. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

## II.     Current Conditions at FCI Hazelton

The BOP website for FCI Hazelton indicates that the facility houses approximately 1781 inmates, 387 of whom are housed in the secure female facility where the defendant resides. Despite the fact that 155 inmates have reportedly tested positive for COVID-19 during the entirety of the pandemic (*see* Motion at 2), currently only two inmates are testing positive. In order to minimize the risk of contact with infected persons, stringent policies have been implemented at FCI Hazelton, including a modified lockdown in the defendant's unit.[1]

## III.    Defendant's Convictions and Requests for a Sentence Reduction

Defendant Candace Claiborne joined the Department of State ("State Department" or

---

[1] The government's response to the defendant's prior motion for compassionate release outlined numerous preventative steps and procedures taken by the U.S. Bureau of Prisons to protect inmates. *See generally* ECF Dkt. # 73. The government incorporates those representations herein.

"DoS") in 1999 as an Office Management Specialist ("OMS").  As a requirement of her position, the defendant held a TOP SECRET security clearance and had access to classified information. Due to her position at the State Department, the defendant had an obligation to report foreign contacts and refrain from accepting all but minimal foreign gifts.  As a security clearance holder, she owed the United States a unique degree of loyalty.  Indeed, when the defendant joined the State Department, she swore an oath:  "I will defend the Constitution of the United States against all enemies foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office . . . ."  ECF Dkt. # 58 (Statement of Facts (hereinafter, "SOF")) ¶ 12.

Notwithstanding these obligations, the defendant maintained a close relationship with two agents of the People's Republic of China ("PRC") Intelligence Service ("PRCIS").  SOF ¶ 10 *et seq.*  For years, she failed to report her foreign contacts, and then provided her Chinese handlers internal State Department documents and information in exchange for extensive gifts, monies, and services provided to her and a close family member.  The defendant further took steps to conceal these contacts and gifts, lying to her employer and to law enforcement and destroying evidence in the process.

In the words of Department of State Counterintelligence Branch Chief Paul Higgins, "[the defendant's] failure to report gifts and foreign contacts resulted in the provision of information to the Chinese government that, in [his] opinion, had the potential to cause harm to the . . . national security of the United States." *See Declaration of Paul Higgins,* ECF Dkt. # XX Exhibit A, (hereinafter, "Higgins Declaration") at ¶ 10.

The defendant was arrested on March 29, 2017 and released on personal recognizance into the High Intensity Supervision Program (HISP).  The defendant pleaded guilty on April 24, 2019 and, per the Court's order, self -surrendered on June 5, 2019 and was held without bond.   This Court sentenced the defendant to a 40-month term of incarceration on July 9, 2019.   After sentencing, BOP designated the defendant to serve her sentence at FCI Hazelton, a BOP facility located in Hazelton, West Virginia. The defendant remains incarcerated at that facility.  The BOP projects the defendant's full term release date to be June 15, 2022.

In June, 2020, the defendant moved this court for release on compassionate release grounds.  In denying the motion, the Court concluded the defendant may be "at greater risk than many but not she is among those most at risk," even assuming – without knowing – that certain health factors might present some incremental risk to the defendant's health.  *See* ECF Minute Order dated July 2, 2020.  The Court further found that the defendant "failed to carry her burden of demonstrating that 'extraordinary and compelling reasons' justify the substantial reduction in her sentence that she seeks."

As of February 16, 2021, BOP records indicate that the defendant's anticipated release date, assuming she earns all available "good time" credits, is April 7, 2022.  On that date, the defendant will have served 34 months of her 40 month sentence.  As of February 16, 2021, the defendant has served one year, eight months and 13 days – approximately 59% of that 34 months.

## IV.     Defendant's Health Concerns

The defendant alleges no new health concerns in the instant Motion, aside from the fact that she contracted COVID-19 in mid-December 2020.  The defendant's medical records for the period since December 1, 2020, filed concurrently hereto as Exhibit A and current as of February 18, 2021, describe that the defendant had a cough, fatigue, and/or body aches for a period that

ended within eleven days.  *See* Exhibit A at 5, 19-31.  On one of those days, she experienced nausea or vomiting and a loss of taste or smell.  *Id* at 29.  The defendant denied having other symptoms of COVID-19.  *Id.*  Medical personnel indicated that the defendant should undergo daily temperature screening each day for 15 days.  *Id.*  That medical order was lifted two days early on December 28, and none of the daily screenings indicated an above-normal temperature.  *Id* at 16. The records from the defendant's next medical visit one month later reveal no discussion at all of COVID-19 or complaints related to it.  *Id* at 1-2. The records describe the defendant undergoing a procedure to remove a wart from her ankle.  *Id.*  The records do not describe any other complaints or any observations apparently related to COVID-19.  *Id.*

## LEGAL FRAMEWORK

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). A court "may reduce the term of imprisonment" in certain circumstances, including when the court finds both that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A). *See United States v. Burnette*, 18-cr-329 (BAH) Minute Order issued May 1, 2020.

A court may reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  As the movant, the defendant bears the burden to establish that she is eligible

for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A).  As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[2]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the

---

[2]   The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and, until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

## ARGUMENT

This Court should deny defendant's motion for a reduction in her sentence with prejudice on either of two independently sufficient grounds. First, defendant has not established that "extraordinary and compelling reasons" support a sentence reduction; second, defendant has not met her burden to show that a reduction is warranted in light of the relevant § 3553(a) factors.

**I.      Defendant Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction**

Defendant's request for a sentence reduction should be denied because she has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).   The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that her condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's

medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

By her own admission, the defendant suffers from no such medical condition.  Instead, she contracted a mild case of COVID-19 over two months ago, and appears to have recovered fully over six weeks ago with no lasting side-effects.  Her argument relies on the mere continuing existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country.  This alone cannot provide a basis for a sentence reduction.  The categories cited in USSG 1B1.13, cmt. n.1(A) encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population.  As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *Raia*, 2020 WL 1647922 at *2; *see also Eberhart*, 2020 WL 1450745 at *2 ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[3]  To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement.  Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not

---

[3]   *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A).  If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[4] that condition may satisfy the standard of "extraordinary and compelling reasons."  Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.  USSG § 1B1.13, cmt. n.1(A)(ii)(I).  In this case, defendant has not shown evidence that she has any medical condition that would make her more vulnerable to becoming seriously ill should she contract COVID-19 again.  To the contrary, the defendant ignores the widely accepted premise that infection and later recovery confers some immunity from future infection.[5]

The defendant has failed to allege any facts or rationale that would constitute an extraordinary and compelling reason within the meaning of § 3582(c)(1) or U.S.S.G. 1B1.13.  Hence, her motion should be denied.

---

[4]   *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified Apr. 2, 2020).

[5] The defendant recounts several anecdotes as support for the idea that, even in recovery, she is "not out of the woods." Motion at 4-5.  These anecdotes are distinguishable from the defendant's case, since each of the persons is described as having pre-existing conditions recognized by the CDC to be risk factors for developing a more severe COVID-19 disease, and none appeared to be fully recovered for anything approaching six weeks—as the defendant has—before taking a turn for the worse.  In addition, although the defendant labels these anecdotes as describing "people who were thought to have recovered from COVID, but later died from it" (*Id.*), most of the articles themselves do not describe COVID-19 as a cause of death.  Instead, the articles describe two persons who were admitted to the hospital with apparently unrelated issues (chest pains, anxiety and stroke).  The third patient, who had already been diagnosed with terminal cancer, died while on a ventilator—arguably a death attributable to COVID-19.

## II.     The § 3553(a) Factors Strongly Weigh Against the Defendant's Release

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

The nature and the circumstances of defendant's crime are detailed *supra*. As the government argued at the time of defendant's sentencing, the defendant jeopardized and possibly harmed the national security of the United States, and benefited the intelligence services of China, all for her own financial gain.  Accordingly, in light of defendant's record and the totality of relevant circumstances, this Court should summarily deny the motion for a sentence reduction.

For these reasons, this Court should deny defendant's motion for a sentence reduction on the merits.

Respectfully submitted,

MICHAEL SHERWIN
Acting United States Attorney
N.Y. Bar No. 4444188

By: /s/ Thomas A. Gillice
Thomas A. Gillice
D.C. Bar No. 452336
Assistant United States Attorney
National Security Section
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
Phone:  (202) 252-1791
Thomas.Gillice@usdoj.gov