# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | \| |
| | \| |
| v. | \|   Criminal No. 17-CR-69 (RDM) |
| | \| |
| **CANDACE MARIE CLAIBORNE** | \| |
| _____ | \| |

## REPLY IN SUPPORT OF MS. CLAIBORNE'S RENEWED EMERGENCY MOTION FOR COMPASSIONATE RELEASE

Ms. Claiborne's COVID infection and the continuing threat of reinfection and death are extraordinary and compelling reasons to grant her compassionate release. Her risk of serious illness and death are now heightened following her infection. The existence of vaccines possibly administered down the road do not make her safe. In fact, the BOP's ineffectual response to COVID shows how unsafe she is. Furthermore, the U.S. Sentencing Commission's policy statements do not prevent her release. Lastly, the conditions of her confinement makes her compassionate release equitable and appropriate.

**I.    Potential after-effects of COVID may come even after a "mild" infection.**

Serious and long-lasting effects of COVID may come even after a mild or asymptomatic infection. The Centers for Disease Control and Prevention is explicit, "Even people who are not hospitalized and who have mild illness can experience persistent or late symptoms." CDC, *Long-Term Effects of COVID-19*, Nov. 13, 2020, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html. Even college athletes with asymptomatic COVID infection had myocardial

1

inflammation, discovered by investigative imaging. *See* Saurabh Rajpal, et al., *Research Letter: Cardiovascular Magnetic Resonance Findings in Competitive Athletes Recovering From COVID-19 Infection*, JAMA Cardiology, Sept 11, 2020, https://jamanetwork.com/journals/jamacardiology/fullarticle/2770645. In other proceedings the government has conceded that the "after-effects of a COVID-19 infection can include significant detrimental effects on heart and lungs." Government's Response to Defendant's Renewed Motion for Compassionate Release at 3, *United States v. Israel*, Case No. 95-cr-314-LEONARD (S.D. Fla. July 29, 2020) (Dkt. # 451).

## II. The existence of vaccines does not eliminate the danger to Ms. Claiborne.

Vaccines do not change the threat to Ms. Claiborne today. Ms. Claiborne has no idea when she might be offered a vaccine or if it will be safe for her and effective against any of the emerging COVID variants. The CDC has highlighted the three main threats from the rise of new COVID-19 variants—they can be more contagious, may be more deadly, and might be more resistant to immunity. CDC, *New Variants of the Virus that Causes COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html (Updated Feb. 12, 2021). Unfortunately, the end of this pandemic is not in sight.

## III. The BOP's haphazard response to COVID has made Ms. Claiborne unsafe.

Ms. Claiborne's COVID infection resulted from the disorganized approach the BOP has taken to the virus. Staff mask use is not enforced. The BOP still has not undertaken comprehensive testing to stop asymptomatic spread. As of today, only 850 out of 1,781 prisoners at FCI Hazelton have been tested even once. *Compare* U.S. DOJ Office of the Inspector General, *Facility Testing Trends*,

https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/page_4/ (select FCC Hazelton and then FCI Hazelton from dropdown menus on the right) *with* Federal BOP, *FCI Hazelton* https://www.bop.gov/locations/institutions/haf/ (last visited Feb. 19, 2021). So while it is some good news that as of today there are only two active COVID infections at FCI Hazelton, without adequate testing, that number gives limited insight.

The vaccine education and distribution efforts are similarly disorganized. Although Ms. Claiborne has not been offered the vaccine, she has heard the discussions when it has been offered to other women in segregation. She can hear it because staff members and patients are shouting through the food slots in the doors. Women are told that they have no chance to ask questions or speak to medical personnel. Rather, they have been told that they must decide right away whether to take the vaccine. Only if they agree, will they be given any literature and they have been told that there will be no ability to decline if they change their minds after reviewing the literature. When one woman nevertheless tried to question the BOP staff member getting consent, the staff member slammed the food slot shot and said, "Fine, I won't be back."

These practices writ large are why a staggering 1 in 4 federal prisoners has been infected by COVID (even with no prevalence testing). *See* The Marshall Project, *A State-by-State Look at Coronavirus in Prison*, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons (last visited Feb. 19, 2021).

The BOP's refusal to assign people to home confinement or move on its own for compassionate release has worsened the problem. It was the inability or unwillingness of the BOP to adequately move for compassionate release on its own that spurred Congress to amend 18 U.S.C. § 3582(c) so that men and women like Ms. Claiborne could bring their own motions for

release. *See United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). The very purpose was to "undercut the strict criteria that the BOP employs," Government's Opposition at 9 [Dkt. # 79], to determine who merits compassionate release. Sadly, the BOP failed to grant the at least 53 requests for compassionate release from men and women who later died of COVID. *See* Alison K. Guernsey and Iowa College of Law Federal Criminal Defense Clinic, *List of Compassionate Release Attempts*, https://law.uiowa.edu/sites/law.uiowa.edu/files/2021-02/List%20of%20Compassionate%20Release%20Attempts%20-%202-17-21.pdf (Feb. 17, 2021). Because the clinic can only track unsealed cases in which motions were filed, it is likely that even more people had filed administrative requests for relief but had not yet filed a motion.

However one looks at the BOP's response to COVID, "it cannot reasonably be said that its efforts have been effective." *United States v. Rios*, CR. NO. 19-00006 JAO, 2021 WL 141238, at *6 (D. Haw. Jan. 14, 2021) (Government's arguments "against compassionate release amounts to arguing that the Court should not grant compassionate release in any case because the BOP has at least tried to curb COVID-19. Trying and doing are two different things").

**IV.    Sentencing Commission policy statements that predate the First Step Act do not limit this Court.**

The government argues that Ms. Claiborne's situation is not covered by the Sentencing Commission policy in § 1B1.13. Because the U.S. Sentencing Commission has not updated its policy statements to address the First Step Act in 2018, "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *United States v. Beck*, 425 F. Supp. 3d 573 (M.D.N.C. June 28, 2019);  *see also United States v. Bradshaw*, No. 1:15-CR-422, 2019 WL 7605447, *3

(M.D.N.C. Sept. 12, 2019) ("there is no policy statement applicable to a defendant's motion for compassionate release which constrains the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)"); *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019) ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582.") (emphasis in original). Courts must therefore make their own determination about whether extraordinary and compelling reasons warrant a sentence reduction.

V.   **The conditions in which Ms. Claiborne has been held support granting compassionate release.**

A prison sentence has two dimensions: length and harshness. *See, e.g.*, *United States v. Spano,* 476 F.3d 476, 479 (7th Cir. 2007) (recognizing that sentencing judges may consider the harshness of prison conditions when assessing the severity of the sentence); *see also United States v. Garcia*, No. 11-cr-989 (JSR), 2020 WL 7212962, at *3 (S.D.N.Y. Dec. 8, 2020) ("both the increased risks faced by vulnerable individuals … and the heightened restrictions imposed upon all prisoners during the pandemic may enhance the deterrent effect of prison sentences served during the pandemic by making the conditions of confinement harsher, both physically and psychologically, than they would otherwise normally be.").

While Ms. Claiborne's COVID infection was relatively mild, her experience was still harsh. During her segregation, she was locked in her cell. Staff passed her boxed through a slot in her door. They allowed her out to shower once every three days, but the unit was uncleaned

because there were no inmates available to do it. While in these conditions, Ms. Claiborne had no access to the phone or computers and could not even buy stamps from commissary. She had no access to her toiletries or hygiene items from her diagnosis on December 15 until January 5.[1] While she in segregation, once a day, a BOP staff person peeked through the door's food slot to check her temperature and ask about her symptoms. As documented in her medical records [sealed Ex. A to ECF Dkt. # 80], after her initial diagnosis of COVID infection, no one listened to her lungs or determined her respiration rate or oxygen levels. If Ms. Claiborne is reinfected or suffers severe after-effects, she may have no way to communicate with counsel.

## VI.   Conclusion

Ms. Claiborne's experience in the BOP has been both harsher and more risky than foreseen when this Court sentenced her. It is within this Court's power to grant her motion for Compassionate Release. She should be resentenced to time served.

Date:   February 19, 2021                    Respectfully submitted,

*/s/ Deborah M. Golden*
Deborah M. Golden, D.C. Bar No. 470578
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
(202) 630-0332
Counsel for Defendant Candace Claiborne

---

[1] Even legal mail continues to be extremely slow. Letters that Ms. Claiborne dated January 7 and January 12 were postmarked January 19—and only arrived at counsel's office the week of February 16. Because of the limited communication, a declaration is unavailable. Ms. Claiborne will be able to testify to the fact described in this Reply at the upcoming hearing.